# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| DAVID N. BRIGGS, | ) |
| Petitioner, | ) |
| vs. | ) Case No. 15-0422-CV-W-ODS-P |
| RONDA PASH, | ) |
| Respondent. | ) |

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY

Petitioner, who is currently confined at the Crossroads Correctional Center in Cameron, Missouri, has filed pro se a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner seeks to challenge his 2009 convictions and sentences for murder in the first degree, robbery in the first degree, and two counts of armed criminal action, which were entered in the Circuit Court of Jackson County, Missouri.

Petitioner asserts nine (9) grounds for relief: (1) that the trial court erred in denying petitioner's request for the opportunity to obtain private counsel; (2) that trial counsel was ineffective for failing to request that the trial court instruct the jury on the lesser-included offense of voluntary manslaughter; (3) that trial counsel was ineffective for failing to adduce evidence of petitioner's mental state at the time of the offense; (4) that trial counsel was ineffective for failing to investigate whether petitioner suffered from "intermittent explosive disorder"; (5) that trial counsel was ineffective for failing to "inject, during petitioner's testimony[,]" the issues of "sudden passion" and "adequate cause"; (6) that trial counsel was ineffective for allowing the trial court to determine the jury instructions prior to all the evidence being adduced at trial; (7) that trial counsel was ineffective for deposing Detective Hernandez four days before trial, and

then failing to adequately cross-examine Detective Hernandez at trial; (8) that trial counsel was ineffective for failing to prepare and put on an adequate defense; and (9) that appellate counsel was ineffective for failing to raise meritorious claims that were preserved for appeal.

Grounds 1 and 2 are without merit and Grounds 3, 4, 5, 6, 7, 8, and 9 are procedurally barred.

## FACTUAL BACKGROUND

On appeal from the denial of petitioner's amended Rule 29.15 post-conviction relief motion, the Missouri Court of Appeals, Western District, summarized the facts of the case:

> Briggs was arrested and charged with one count of first-degree murder (§ 565.020, RSMo), one count of first-degree robbery (§ 569.020), and two counts of armed criminal action (§ 571.015), in connection with the January 24, 2008, robbery and murder of a fifty-one year old man.
>
> Briggs testified at his trial that he was eighteen years old and had been living with the victim since November 2007. He stated that the victim took him in when he did not have a place to stay. Briggs said that he initially regarded the victim as a father figure. Eventually, Briggs testified [that] the victim let Briggs know that he wanted a sexual relationship with him, a situation with which Briggs was "not comfortable."
>
> Briggs stated that on the morning of January 24, 2008, he woke up to find the victim on top of him trying to pull his pants down. Briggs pushed him away, grabbed his school clothes, and drove the victim's vehicle to school. During the day, the victim left multiple messages on Briggs's cell phone indicating that he was upset with Briggs for driving the victim's vehicle to school.
>
> That evening, Briggs drove to the victim's apartment, accompanied by Derrick Wooten and Joyce Livingston. Briggs said that he went there to approach the victim about "the homosexual thing" and that he wanted Wooten to come along in case of a fight. Briggs also planned to retrieve his own belongings and to steal another of the victim's cars. When they arrived, Briggs went up to the apartment, and Wooten and Livingston stayed in the car. Briggs carried Wooten's .38 caliber handgun with him. Briggs knocked on the door, and the victim opened the door and started arguing with Briggs. Briggs then began throwing punches, and the two men got into a fight. At one point, the victim kicked Briggs's chest, separating the two. Briggs then ran to the closet and grabbed a .45 caliber handgun.

Briggs then walked downstairs where the victim was knocking on the neighbor's door for help. Briggs fired the .45 caliber handgun at the victim until the gun would not fire anymore. Briggs said that he "freaked out" and ran around the apartment building. He then ran back to the victim's apartment to grab the keys to the victim's other vehicle. He saw the victim and shot him several more times with Wooten's .38 caliber handgun. He stated: "Everything was just happening so fast. Nothing clear was going through my mind."

Brigg's statement to the police (a videotape of which was played at trial) was consistent with his trial testimony. Briggs told the police that he intended to confront the victim and that he planned to fight the victim and to steal his cars. After first shooting the victim with the .45 caliber handgun, and then running around the apartment building, Briggs said that he returned and found the victim moving around, so he shot him with the .38 caliber handgun. He told the police that something in the back of his head told him: "You got to finish it off. You started it and got to finish it." Briggs, Livingston, and Wooten drove off with the two cars, which they later abandoned in a parking lot. Briggs said that he threw both guns into the river.

The medical examiner testified that the victim had been shot ten times and that those gunshot wounds were the cause of death. When police found the victim's two vehicles, they retrieved Briggs's book bag from the trunk of one of them. The bag contained the car titles to the victim's two cars. At Livingston's home, the police found credit cards, a driver's license, and a wallet belonging to the victim. At Wooten's home, they found the .38 caliber handgun Briggs had utilized. A police firearms examiner verified that it was the gun that had fired bullets recovered from the crime scene and from the morgue. The .45 caliber handgun was not found.

At the close of evidence, the circuit court submitted three verdict directors related to the murder charge, for first-degree murder, first-degree robbery, and two counts of armed criminal action. The court sentenced Briggs to consecutive prison terms of life without parole, ten years, three years, and three years, respectively. This court affirmed Briggs's convictions and sentences on direct appeal in *State v. Briggs*, 318 S.W.3d 203 (Mo. App. 2010).

Respondent's Exhibit B, pp. 1-4 (internal footnotes omitted).

## GROUND 1 – TRIAL COURT DID NOT ALLOW PRIVATE COUNSEL

In Ground 1, petitioner contends that the trial court erred in denying petitioner's request for the opportunity to obtain private counsel. On direct appeal, the Missouri Court of Appeals, Western District, disposed of petitioner's claim as follows:

Although Briggs has a constitutional right to legal counsel, he does not have an absolute right to be represented by counsel of his own choosing. *State v. Jefferies*, 504 S.W.2d 6, 7 (Mo. 1974). His constitutional right to counsel does not mean that he is entitled to the aid of a particular attorney. *State v. Williams*, 419 S.W.2d 49, 54 (Mo. 1967). His right to be represented by counsel of his own choosing is limited to the extent that it impinges on the public's right to effective and efficient administration of justice. *Jefferies*, 504 S.W.2d at 7.

The circuit court has broad discretion in ruling upon a request by the defendant to discharge counsel and to appoint substitute counsel. *State v. Rice*, 249 S.W.3d 245, 251 (Mo. App. 2008). "To warrant substitution of counsel, a defendant must show 'justifiable dissatisfaction' with appointed counsel." *State v. Hornbuckle*, 769 S.W.2d 89, 96 (Mo. banc 1989). "To obtain a change of attorney on the eve of trial, a defendant must show 'irreconcilable conflict' with counsel, which is a total breakdown in communication between the defendant and his attorney." *Rice*, 249 S.W.3d at 251. Mere disagreement about strategy does not equate to a total breakdown in communication. *Id.*

In this case, Briggs did not ask for the change of attorney on the eve of trial but waited until after the completion of voir dire to make his request. In asking for the change of attorney, Briggs merely told the circuit court that he had obtained information that he thought would help him in his case and that his appointed counsel had not "relinquished" or told him about this information. Even had Briggs asked for the change of attorney before the trial began, he did not establish that an 'irreconcilable conflict' existed between him and his counsel. The failure of appointed counsel to relinquish or tell Briggs about information that might be helpful to Briggs in his case does not show that "a total breakdown in communication" existed between them.

Briggs contends, however, that the circuit court should have at least made an informal inquiry as to whether substitution was warranted. In support of his contention, Briggs relies on *State v. Fields*, 636 S.W.2d 79, 80-81 (Mo. App. 1982). In *Fields*, this court's Eastern District held that the circuit court has an obligation to make at least an informal inquiry to determine whether any incident has occurred to warrant a substitution of attorneys. *Id.* Contrary to what Briggs contends, the circuit court did make an informal inquiry concerning Briggs's desire to substitute attorneys. Once it was brought to the circuit court's attention that Briggs wanted to change attorneys, the circuit court let Briggs make his record and address the court. Briggs told the circuit court that appointed counsel did not "relinquish" or tell Briggs about information that might be helpful to Briggs's case and that he believed that he "would have a better chance with a paid attorney." Such an inquiry was sufficient under *Fields*, given the plain error standard of review.

Although Briggs contends that the circuit court erroneously assumed that Briggs would require a continuance if substitution were allowed, when Briggs

made no continuance request (at least explicitly), such an assumption was not unfounded where a mid-stream request to change counsel is made in a first-degree murder case. Moreover, Briggs did not provide the court with any information as to retained counsel's identity, presence in the courtroom, or availability and preparedness to continue the ongoing trial.

Briggs also claims that the circuit court erred in allowing a public defender to represent him because he was not really indigent and, therefore, did not qualify for the services of the public defender. This argument is without merit.

The record establishes that the public defender's office determined, at the beginning of the case, that Briggs qualified for its services. Pursuant to section 600.086.3, RSMo 2000, to qualify for the public defender's services, Briggs had to file with the court an affidavit containing factual information supporting his claim of indigency. Thus, it is disingenuous for Briggs to argue that the public defender should not have been representing him because he was not indigent. Indeed, section 600.086.4 says that "[a]ny person who intentionally falsifies such affidavit in order to obtain state public defender system services shall be guilty of a class A misdemeanor."

Moreover, section 600.086.3 says:

> The determination of indigency of any person seeking the services of the state public defender system shall be made by the defender or anyone serving under him at any stage of the proceedings. Upon motion by either party, the court in which the case is pending shall have authority to determine whether the services of the public defender may be utilized by the defendant. Upon the courts finding that the defendant is not indigent, the public defender shall no longer represent the defendant.

According to this section, the public defender's office, not the circuit court, is responsible for determining whether a defendant financially qualifies for its services. If Briggs managed to gather enough resources to disqualify himself from the public defender's services, it was incumbent upon the public defender to make that determination and for either the public defender or Briggs to file a motion with the circuit court to determine whether the services of the public defender were needed. Neither Briggs nor the public defender filed such a motion. Indeed, the public defender did not even file a motion seeking to withdraw from the case.

Briggs claims that to allow the public defender's office to represent a non-indigent client violates "the spirit of the entire Chapter 600." But, nothing in Chapter 600 suggests that appointing an attorney to a non-indigent defendant is reversible error. The spirit (and purpose) of Chapter 600 is to give effect to the Sixth Amendment guarantee that all criminal defendants are entitled to the

assistance of counsel. If occasionally a non-indigent defendant receives appointed counsel even though he technically does not qualify, the spirit of the law – to ensure that every defendant is represented – is not undermined in the least.

The circuit court did not plainly err in permitting the public defender to represent Briggs or in refusing Briggs's mid-trial request to bring in new counsel. We, therefore, affirm the circuit court's judgment.

Respondent's Exhibit A, pp. 4-7 (internal footnotes omitted).

The decision of the Missouri Court of Appeals is reasonable and therefore is entitled to deference under § 2254(d). The resolution of Ground 1 by the state court did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000).[1]  Consequently, Ground 1 is denied.

## GROUND 2 - INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

In Ground 2, petitioner contends that trial counsel was ineffective for failing to request that the trial court instruct the jury on the lesser-included offense of voluntary manslaughter. Petitioner contends that, had the jury been instructed of such, there is a reasonable probability that the outcome of the trial would have been different.

---

[1]According to the concurrence of Justice O'Connor, joined by four other members of the Court, "under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Williams</u>, 529 U.S. at 413, 120 S.Ct. at 1523.

In order for petitioner to successfully assert a claim of ineffective assistance of counsel, petitioner must demonstrate that his attorney's performance "fell below an objective standard of reasonableness" and that "the deficient performance" actually prejudiced him. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). This Court may not grant habeas relief unless the state appellate court's decision "was contrary to, or an unreasonable application of, the standard articulated by the [United States] Supreme Court in Strickland." Owens v. Dormire, 198 F.3d 679, 681 (8th Cir. 1999), cert. denied, 530 U.S. 1265 (2000).

"A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 131 S. Ct. 770, 787 (2011) (quoting Strickland, 466 U.S. at 689). Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687.

The Missouri Court of Appeals, Western District, found that the motion court's judgment was supported by the record:

> In his first point on appeal, Briggs contends that the circuit court erred in denying his post-conviction motion because his trial counsel rendered ineffective assistance by failing to request that the court instruct the jury on the lesser-included offense of voluntary manslaughter. Briggs claims that there is a reasonable likelihood that the outcome of the trial would have been different if the jury had been instructed on voluntary manslaughter.
>
> To prevail on an ineffective assistance of counsel claim, the movant must show, by a preponderance of the evidence, that counsel failed to satisfy the test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *Johnson*, 406 S.W.3d at 898. That test requires the movant to establish both (1) that his attorney's performance "did not conform to the degree of skill, care, and diligence of a reasonably competent attorney," and (2) that his attorney's failures prejudiced his case. *Tisius v. State*, 183 S.W.3d 207, 211-12 (Mo. banc 2006) (citing *Strickland*, 466 U.S. at 687). To satisfy the performance prong of *Strickland*, the movant must overcome the strong presumption that counsel acted professionally and that any challenged action was based on sound trial strategy. *Id.* at 211. To prove prejudice, he must show that, "but for counsel's poor performance, there is

a reasonable probability that the outcome of the court proceeding would have been different." *Id.* at 212.

The crimes at issue in this case are defined in Chapter 565. A person commits first-degree murder, "if he knowingly causes the death of another person ***after deliberation*** upon the matter." § 565.020.1, RSMo (emphasis added). A person commits conventional second-degree murder, if he "[k]nowingly causes the death of another person or, with the purpose of causing serious physical injury to another person, causes the death of another person." § 565.021.1(1). A person commits second-degree felony murder if he "[c]ommits or attempts to commit any felony, and, in the perpetration . . . of such felony . . . , another person is killed as a result of the perpetration . . . of such felony." § 565.021.1(2). Voluntary manslaughter is committed when a person "[c]auses the death of another person under circumstances that would constitute murder in the second degree under [section 565.021.1(1)], ***except that he caused the death under the influence of sudden passion arising from adequate cause***." § 565.023.1(1) (emphasis added).

Voluntary manslaughter is a lesser-included offense of both first-degree and second-degree murder. § 565.025.2. Pursuant to section 556.046, a trial court is required to give an instruction for a lesser-included offense "when the evidence provides a basis for both the acquittal of the greater offense and the conviction of the lesser offense." *See State v. Johnson*, 284 S.W.3d 561, 575 (Mo. banc 2009); § 556.046.3, RSMo 2007 Cum. Supp. In two recent direct criminal appeals, *State v. Jackson*, ---S.W.3d---, No. SC93108 (Mo. banc June 14, 2014), and *State v. Pierce*, ---S.W.3d---, No. SC93321 (Mo. banc June 24, 2014), the Missouri Supreme Court held that when the defense requests an instruction on certain lesser-included offenses, the trial court must submit it. This case differs from *Jackson* and *Pierce*, however, in that the jurors in those cases apparently were not given *any* lesser-included offense instructions, leaving them with an "all-or-nothing" choice. In contrast, the jury in this case was instructed on first-degree murder, conventional second-degree murder, and second-degree felony murder and chose to convict Briggs of first-degree murder. Additionally, while *Jackson* and *Pierce* clearly control the issue of when a ***requested*** instruction ought to be given by the court, in the case at bar, the issues are the ineffectiveness of counsel for failure to request a lesser-included instruction and the prejudice, if any, as a result of that failure.

As noted, to prevail on a claim of ineffective assistance of counsel, the movant must satisfy *both* the performance prong and the prejudice prong of *Strickland*. *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987). In assessing whether the movant has satisfied the prejudice prong of *Strickland*, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." 466 U.S. at 695. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "An error by counsel, even if professionally unreasonable,

does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. As explained in *Strickland*, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* at 697. Such is the case here.

Briggs contends that he was prejudiced because, if the voluntary manslaughter instruction had been given, there is a reasonable likelihood (based on the evidence of his confusion and anger over the unwanted sexual advance, the repeated phone calls from the victim, and the fight preceding the shooting) that the jury would have found that he acted "under the influence of sudden passion arising from adequate cause" and convicted him on that lesser offense. Briggs also claims that if the jury had had "three levels of homicide to consider, there was a reasonable probability that the jury might have compromised and found [him] guilty of second degree murder."

First, Briggs does not persuade us that the mere addition of a voluntary manslaughter instruction would have caused the jury to "compromise" on a second-degree murder conviction (as opposed to following the instructions and the law, as we must presume all juries do, *see Strickland*, 466 U.S. at 694-95). But, in any event, Briggs's theories of prejudice are negated by the fact that the jury had three versions of homicide to choose from (*i.e.*, first-degree murder and two variations of second-degree murder), and chose to convict on the highest offense submitted. As the circuit court noted,

> [the] movant was not prejudiced because the issue of whether movant deliberately killed the victim was adequately presented to the jury in the form of the verdict direction instruction for second degree murder—a proposition [that] the jury rejected by convicting movant of murder in the first degree.

We agree. In *State v. Petary*, 781 S.W.2d 534, 544 (Mo. banc 1989), where the jury was instructed on first-degree and conventional second-degree murder and convicted the defendant of first-degree murder, our Supreme Court held that the defendant was not harmed by the absence of an instruction on second-degree felony murder, in that such an instruction "would have been superfluous." The Court further held that "[b]eacuse the instruction would have been superfluous, there is also no ineffective assistance of counsel with respect to his claim." *Id.* Here, the jury could have convicted Briggs of second-degree murder or second-degree felony murder if the jurors had had any doubt about whether he knowingly caused the victim's death ***after deliberation***, but the jury found him guilty of first-degree murder.

Given that the jury convicted Briggs of first-degree murder when it could have convicted him of either the two types of second-degree murder, and given the overwhelming evidence that supports that conviction, even if trial counsel had requested an instruction on voluntary manslaughter and the instruction had been

> given, there is no reasonable probability that the outcome of the trial would have
> been different. Thus, Briggs has not proven prejudice, and the circuit court did
> not clearly err in denying his motion for post-conviction relief. Point denied.

Respondent's Exhibit B, pp. 6-10 (internal footnotes omitted).

The decision of the Missouri Court of Appeals is reasonable and therefore is entitled to deference under § 2254(d). The resolution of Ground 2 by the state court did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 412 (2000). Applying the Strickland standard of review to the facts as set forth in the record, the Court finds that counsel was not ineffective.

Ground 2 is denied.

## GROUNDS 3 THROUGH 9 – PROCEDURAL DEFAULT

In Ground 3, petitioner contends that trial counsel was ineffective for failing to adduce evidence of petitioner's mental state at the time of the offense. In Ground 4, petitioner contends that trial counsel was ineffective for failing to investigate whether petitioner suffered from "intermittent explosive disorder[.]" In Ground 5, petitioner contends that trial counsel was ineffective for failing to "inject, during petitioner's testimony[,]" the issues of "sudden passion" and "adequate cause[.]" In Ground 6, petitioner contends that trial counsel was ineffective for allowing the trial court to determine the jury instructions prior to all the evidence being adduced at trial. In Ground 7, petitioner contends that trial counsel was ineffective for deposing Detective Hernandez four days before trial, and then failing to adequately cross-examine Detective

Hernandez at trial. In Ground 8, petitioner contends that trial counsel was ineffective for failing to prepare and put on an adequate defense. In Ground 9, petitioner contends that appellate counsel was ineffective for failing to raise meritorious claims that were preserved for appeal. Grounds 3 through 9 are procedurally defaulted.

> In Coleman v. Thompson, 501 U.S. 722 (1991), the Supreme Court held:
>
> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Id. at 750. Cause, actual prejudice, and the probability of a "fundamental miscarriage of justice" are to be judged under criteria set out in Wainwright v. Sykes, 433 U.S. 72 (1977), and Murray v. Carrier, 477 U.S. 478 (1986). Coleman, 501 U.S. at 748-50.

A review of the record shows that petitioner did not raise Ground 9 in his amended Rule 29.15 motion and did not raise Grounds 3, 4, 5, 6, 7, or 8 on appeal from the denial of his amended Rule 29.15 motion. Therefore, Grounds 3, 4, 5, 6, 7, 8, and 9 are procedurally defaulted and may not be reviewed by this Court unless petitioner can demonstrate cause and actual prejudice, or that failure to consider his claims will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750. The Court will not reach the "prejudice" component of the analysis unless it first finds that the petitioner has demonstrated "cause" for his procedural default.

In Ground 9, it appears that petitioner may be attempting to demonstrate cause for his procedural default of Grounds 3, 4, 5, 6, 7, and 8 under Martinez v. Ryan, 132 S. Ct. 1309, 1312 (2012). However, even if petitioner could show ineffective assistance or abandonment of post-conviction counsel regarding Grounds 3 through 8, his procedurally defaulted claims

nevertheless fail because petitioner's underlying claims do not allege "substantial" claims of ineffective assistance of trial counsel as required under the second prong of Martinez. 132 S. Ct. at 1318.

Indeed, petitioner does not present any valid explanation for why these grounds were not pursued on appeal from the denial of his amended Rule 29.15 motion and, therefore, has failed to demonstrate cause for his procedural default. As a result, we do not consider prejudice. The Court, however, can still reach the merits of his claims if petitioner can show that he is "probably actually innocent" of the crimes for which he was convicted. Bowman v. Gammon, 85 F.3d 1339, 1346 (8th Cir. 1996), cert. denied, 520 U.S. 1128 (1997). To demonstrate his innocence, petitioner must satisfy a two-part test: First, he must support his allegations of constitutional error "with new reliable evidence. . . that was not presented at trial." Second, he must establish "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Id., citing Schlup v. Delo, 513 U.S. 298 (1995). Petitioner fails to make this showing.

Petitioner has failed to show cause for his default of Grounds 3, 4, 5, 6, 7, 8, and 9. He does not show that a manifest injustice will occur if these grounds are not reviewed on the merits, and he has failed to meet the Schlup standard for actual innocence. Id. Therefore, federal review of Grounds 3, 4, 5, 6, 7, 8, and 9 is barred.

Grounds 3, 4, 5, 6, 7, 8, and 9 will be denied.

## CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling

on the constitutional claim(s) "debatable or wrong."  Tennard v. Dretke, 542 U.S. 274, 276 (2004).  Because petitioner has not met this standard, a certificate of appealability will be denied.  See 28 U.S.C. § 2254, Rule 11(a).

Accordingly, it is **ORDERED** that:

(1) the petition for writ of habeas corpus is **DENIED**;

(2) this case is **DISMISSED** with prejudice; and

(3) a certificate of appealability is **DENIED**.

/s/ *Ortrie D. Smith*_____ _
ORTRIE D. SMITH
UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated:  February 23, 2016.